**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GOLDEN ADVENTURE SHIPPING CORP. and HASSAN CHAHADEH,<br><br>*Plaintiffs*,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-01103-SLS<br><br>ORAL ARGUMENT REQUESTED |

**COSCO SHIPPING (NORTH AMERICA) INC.'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS AGAINST IT**

WHITE & CASE
701 Thirteenth Street, NW
Washington, DC 20005

September 15, 2026

*Counsel for COSCO SHIPPING (North America) Inc.*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................4

I. THE COMPLAINT FAILS TO ALLEGE SUBJECT-MATTER JURISDICTION OVER THE CLAIMS AGAINST COSCO NA ..........................................................4

II. THE COMPLAINT FAILS TO ALLEGE PERSONAL JURISDICTION OVER COSCO NA .....................................................................................................................7

A. The Opposition Cannot Avoid That the Complaint Alleges Personal Jurisdiction Over COSCO NA Exclusively Under the FSIA ..................................7

B. The Opposition Fails to Overcome the Complaint's Failure to Allege Any Other Basis for This Court to Exercise Personal Jurisdiction Over COSCO NA ....................................................................................................8

C. The Opposition's Request for a Surreply Is Groundless and Should Be Denied ..........................................................................................................10

III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST COSCO NA ..................11

A. The Opposition Does Not Overcome That Plaintiffs' Conclusory Group Pleading Violates Rule 8..........................................................................13

B. The Opposition Does Not Overcome That Dismissal of the ATA Claim Should Be With Prejudice...........................................................................14

C. The Opposition Does Not Overcome That the Complaint Fails to State a RICO Claim ..............................................................................................16

1. The Opposition Does Not Overcome That the Complaint Fails to Allege a Domestic Injury ...............................................................16

2. The Opposition Does Not Overcome That the Complaint Fails to Allege a Racketeering Claim Under § 1962(c)..........................................18

3. The Opposition Does Not Overcome That the Complaint Fails to Allege a Conspiracy Claim Under § 1962(d) ............................................20

D. The Opposition Does Not Overcome That the Complaint Fails to State a Claim for Tortious Interference ..............................................................22

IV. DISPOSITION OF PLAINTIFFS' CLAIMS AGAINST COSCO NA SHOULD NOT BE DELAYED.........................................................................................23

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abernathy v. Carlyle Grp. Inc*,
No. 22-cv-3603-ABJ, 2024 WL 5331993 (D.D.C. Sept. 27, 2024) ....................16–18

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)....................19

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)....................4

* *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
297 F. Supp. 2d 165 (D.D.C. 2003)....................2, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................20

*Banner Health v. Sebelius*,
905 F. Supp. 2d 174 (D.D.C. 2012) ....................11

*Bates v. Northwestern Hum. Servs., Inc.*,
466 F. Supp. 2d 69 (D.D.C. 2006) ....................14, 20

*Behrens v. JPMorgan Chase Bank, N.A.*,
96 F.4th 202 (2d Cir. 2024) ....................2, 5

* *Belizan v. Hershon*,
434 F.3d 579 (D.C. Cir. 2006) ....................11–12, 23

*Bigwood v. U.S. Dep't of Def.*,
132 F. Supp. 3d 124 (D.D.C. 2015)....................11

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)....................19–20

*Brown v. Carr*,
503 A.2d 1241 (D.C. 1986) ....................23

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
274 F. Supp. 2d 86 (D.D.C. 2003)....................8–9

*Cheeks v. Fort Myer Constr. Corp.*,
71 F. Supp. 3d 163 (D.D.C. 2014)....................14

*Cole v. Boeing Co.*,
621 F. App'x 10 (D.C. Cir. 2015).......................................................................11–12, 15

*Cole v. Garner*,
No. 25-cv-4239-RDM, 2026 WL 1266184 (D.D.C. May 8, 2026) ........................................10

*Coleman v. Pension Benefit Guar. Corp.*,
94 F. Supp. 2d 18 (D.D.C. 2000)..............................................................................................2

*Colon v. Twitter, Inc.*,
14 F.4th 1213 (11th Cir. 2021) ...............................................................................................15

*Ctr. for Reprod. L. & Pol'y v. Bush*,
304 F.3d 183 (2d Cir. 2002)......................................................................................................12

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*,
183 F.3d 453 (5th Cir. 1999) .....................................................................................................6

*Erickson v. Pardus*,
551 U.S. 89 (2007).....................................................................................................................14

*Erwin-Simpson v. AirAsia Berhad*,
985 F.3d 883 (D.C. Cir. 2021) ...................................................................................................8

*Exec. Jet Aviation, Inc. v. City of Cleveland*,
409 U.S. 249 (1972).....................................................................................................................7

*FC Inv. Grp. v. IFX Mkts., Ltd.*,
529 F.3d 1087 (D.C. Cir. 2008) ..........................................................................................9, 11

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996)..............................................................................................11, 15

* *Foman v. Davis*,
371 U.S. 178 (1962)...........................................................................................................14–15, 18

*Gligorov v. Nation of Brunei*,
No. 21-cv-1773-TSC, 2023 WL 1438326 (D.D.C. Jan. 31, 2023)...........................................9

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03-md-1570-GBD-SN, 2026 WL 2432174 (S.D.N.Y. Aug. 19, 2026) .............................9

*In re Terrorist Attacks on Sept. 11, 2001*,
718 F. Supp. 2d 456 (S.D.N.Y. 2010).........................................................................................9

*Jankovic v. Int'l Crisis Grp.*,
593 F.3d 22 (D.C. Cir. 2010) ......................................................................................................23

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock*,
513 U.S. 527 (1995) ....................5, 7

*Jung v. Ass'n of Am. Med. Colls.*,
184 Fed. App'x 9 (D.C. Cir. 2006) ....................15

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ....................18

*Ocasio v. United States*,
578 U.S. 282 (2016)....................21

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016)....................17

*Rodriguez v. U.S. Dep't of the Air Force*,
387 F. Supp. 3d 130 (D.D.C. 2019)....................10

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP*,
682 F.3d 1043 (D.C. Cir. 2012)....................21

*Saunders v. Mills*,
172 F. Supp. 3d 74 (D.D.C. 2016)....................3, 5

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003)....................19

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005)....................2, 5

*Sekhar v. United States*,
570 U.S. 729 (2013)....................19

*Sherrod v. Breitbart*,
720 F.3d 932 (D.C. Cir. 2013)....................12

*Simon v. Intercontinental Transp. (ICT) B.V.*,
882 F.2d 1435 (9th Cir. 1989) ....................5

*Sisson v. Ruby*,
497 U.S. 358 (1990)....................5–6

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................12

*Toumazou v. Turkish Republic of N. Cyprus*,
71 F. Supp. 3d 7 (D.D.C. 2014)....................14, 20

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990) .......... 2–3

*Victaulic Co. v. Allied Rubber & Gasket Co.*,
No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. 2020) .......... 24

*Wultz v. Islamic Republic of Iran*,
755 F. Supp. 2d 1 (D.D.C. 2010) .......... 8

* *Yegiazaryan v. Smagin*,
599 U.S. 533 (2023) .......... 16–17

*Yerkyn v. Yakovlevich*,
164 F.4th 224 (2d Cir. 2026) .......... 17–18

## STATUTES AND RULES

Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 1951

18 U.S.C. § 1951(a) .......... 18

18 U.S.C. § 1951(b)(2) .......... 18

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968

18 U.S.C. § 1962(c) .......... 18

18 U.S.C. § 1962(d) .......... 20

18 U.S.C. § 1965(a) .......... 9–10

18 U.S.C. § 1965(b) .......... 9–10

Antiterrorism Act, 18 U.S.C. §§ 2331–2339D, as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222 (2016)

18 U.S.C. § 2333(a) .......... 15

18 U.S.C. § 2333(d)(2) .......... 12, 15

28 U.S.C. § 1331 .......... 4

28 U.S.C. § 1333 .......... 4, 5

28 U.S.C. § 1367 .......... 4

Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602–1611

28 U.S.C. § 1608 .......... 24

Fed. R. Civ. P. 4(j) ....................24

Fed. R. Civ. P. 4(k)(1)....................9

Fed. R. Civ. P. 5(a) ....................24

Fed. R. Civ. P. 8....................13, 14

Fed. R. Civ. P. 12(b)(6)....................12

Fed. R. Civ. P. 15(a)(1)(B) ....................2

Fed. R. Civ. P. 44.1....................22

* *Indicates authority on which counsel chiefly relies*

## INTRODUCTION

Unable to defend their facially deficient and largely incoherent Complaint (ECF 1), and apparently reluctant to amend it, Plaintiffs have instead tried to rewrite their Complaint through their Opposition brief (ECF 10). Worse, the Opposition (at 1–3) accuses COSCO NA of misreading the Complaint, insinuating that COSCO NA's Motion to Dismiss (ECF 9-1) was somehow misleading, when the Motion merely recited the Complaint as it was unambiguously written. Such gaslighting is as fruitless as it is offensive.

The Complaint expressly invokes the FSIA's commercial-activity exception as the exclusive basis for subject-matter jurisdiction over COSCO NA — not just once, as the Opposition incorrectly asserts (at 6–7), but *repeatedly*. *See, e.g.*, Compl. ¶ 13 (basing subject-matter jurisdiction over COSCO NA, by name, "exclusively" on FSIA's commercial-activity exception); ¶ 75 ("[j]urisdiction over all Chinese Defendants [defined to include COSCO NA] . . . rests exclusively on the commercial activity exception, 28 U.S.C. § 1605(a)(2)"); ¶ 91 (invoking "the FSIA's first-clause commercial activity nexus *for COSCO Shipping (North America) Inc.*" (emphasis added)); *id*. (contending that FSIA commercial-activity exception's nexus requirement is met for "every Chinese Defendant," including COSCO NA). Having defined COSCO NA as a foreign-state Defendant, the Complaint also invoked the FSIA as the sole basis for personal jurisdiction over COSCO NA. *See* Compl. ¶ 20; *see also* Mot. 16–17. Given the Complaint's specific and repeated reliance upon the FSIA's commercial-activity exception as the exclusive basis of subject-matter jurisdiction and personal jurisdiction over COSCO NA, the Complaint's passing references to federal-question or admiralty jurisdiction are inescapably applicable to Defendants other than COSCO NA.

In their Opposition, Plaintiffs reverse course 180 degrees, and argue (at 6–7) that the FSIA's commercial-activity exception is *in*applicable to COSCO NA. COSCO NA agrees, including because it is not an agency or instrumentality of a foreign state, and, besides, the Complaint does not meet any of the commercial-activity exception's requirements. *See* Mot. 3, 4–16.

Having affirmatively disavowed Plaintiffs' jurisdictional pleading based on the FSIA, the Opposition tries, improperly, to plead three new theories of subject-matter jurisdiction and four new theories of personal jurisdiction. But Plaintiffs cannot amend their Complaint through their Opposition brief. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))). And Plaintiffs declined their opportunity to amend their Complaint as of right under Rule 15(a)(1)(B) after COSCO NA served its motion.

Because the Complaint pleads that subject-matter jurisdiction is based "exclusively" on the FSIA's commercial-activity exception, and that personal jurisdiction is likewise based solely on the FSIA, Plaintiffs forfeited any new theories of jurisdiction over COSCO NA. *See Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 207 (2d Cir. 2024) ("[A] party forfeits the invocation of subject-matter jurisdiction when it fails to timely raise it."). And though the Opposition belatedly *raises* these new theories of subject-matter and personal jurisdiction, it makes no attempt to *establish* that they apply here through identification of specific allegations or argument, and so it has waived them. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quoting *United*

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))); *Saunders v. Mills*, 172 F. Supp. 3d 74, 96 (D.D.C. 2016) (holding that because brief "presents only a legal conclusion, not an argument," issue was waived). The Court thus should not consider these new theories of subject-matter and personal jurisdiction, which have been forfeited by the Complaint and waived by the Opposition.

Not only are these fresh theories improperly before the Court, the Opposition's own arguments preclude any reliance on admiralty jurisdiction, and federal-question jurisdiction does not apply to Plaintiffs' state-law claims. As to personal jurisdiction, none of the Opposition's new jurisdictional theories applies here, and the Opposition makes no attempt to show otherwise.

Jurisdictional deficiencies aside, the Court should dismiss all claims against COSCO NA with prejudice for failure to state a claim. The Opposition concedes that Plaintiffs cannot allege the threshold elements for ATA aiding-and-abetting liability, and that the claim should be dismissed. *See* Opp'n 22. The Opposition also illustrates (at 18–21, 22–23) that Plaintiffs cannot allege the threshold elements of their RICO and tortious-interference claims, and that amendment of the Complaint would be futile.

COSCO NA has been sued and served and, accordingly, appeared, and it is entitled to prompt dismissal of the baseless claims against it. Having declined to amend their Complaint after being put on notice of its deficiencies, Plaintiffs should not be given yet another chance to inflict on COSCO NA further delays, costs, and prejudice. Dismissal, therefore, should be with prejudice. And the Court should reject out of hand the Opposition's extraordinary and inequitable request that any amendment be delayed until 30 days after every other Defendant has been served and had an opportunity to answer. COSCO NA's right to dismissal should not be contingent upon Plaintiffs' dilatory service efforts on the other sixteen Defendants — not one of whom Plaintiffs state that they have served after more than five months of supposed effort. *See* Pls.' Status Report,

ECF No. 11 (Aug. 31, 2026) (confirming that Plaintiffs still had not served 14 of the 16 other Defendants); Pls.' Notices of Withdrawal of Motions for Entry of Default, ECF Nos. 16, 17 (Sept. 3, 2026) (confirming that Plaintiffs had not served remaining two Defendants). Plaintiffs are not entitled to park an action on this Court's docket indefinitely while COSCO NA suffers the consequences of being under the shadow of inflammatory (and meritless) claims.

## ARGUMENT

### I. THE COMPLAINT FAILS TO ALLEGE SUBJECT-MATTER JURISDICTION OVER THE CLAIMS AGAINST COSCO NA

The Opposition impermissibly purports (at 1–11) to rewrite and amend the Complaint, revoking the Complaint's repeated reliance on the FSIA's commercial-activity exception (*see* ¶¶ 13, 75, 91) as the "exclusive[]" basis for subject-matter jurisdiction over COSCO NA. The Opposition's proposed amendment (at 7) makes no sense. If the FSIA is a basis for subject-matter jurisdiction over the claims against COSCO NA, then it *is* the "exclusive" basis for such claims and cannot be, as the Opposition contends (at 7), "in addition to" any "non-FSIA bases." *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–39 (1989) (holding that the FSIA is the "sole basis" for jurisdiction over a foreign state and rejecting independent reliance on the Alien Tort Statute and general admiralty jurisdiction).

Stymied, the Opposition offers three *new* theories of subject-matter jurisdiction, not previously pleaded as to COSCO NA: for the RICO claims, the admiralty and marine statute, 28 U.S.C. § 1333, and the federal-question statute, 28 U.S.C. § 1331; and, for the tortious-interference claims, supplemental jurisdiction, 28 U.S.C. § 1367. *See* Opp'n 7 (conceding that any "non-FSIA" theories of subject-matter jurisdiction are not "made express" in the Complaint). But as discussed above, the Opposition's attempt to amend the Complaint is improper. *See Arbitraje Casa de Cambio*, 297 F. Supp. 2d at 170. The Complaint forfeited these theories of subject-matter

jurisdiction, and the Opposition waived them. *See Behrens*, 96 F.4th at 207; *Schneider*, 412 F.3d at 200 n.1 (D.C. Cir. 2005); *Saunders*, 172 F. Supp. 3d at 96.

Besides, the Opposition itself precludes Plaintiffs from relying on admiralty jurisdiction. Plaintiffs cannot invoke 28 U.S.C. § 1333 to save the RICO claims after telling this Court, in the very same brief, that those claims have nothing to do with the sea. *See* Opp'n 14–15. Admiralty jurisdiction requires that the "general character" of the activity giving rise to the incident bear a "substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 534 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 365 (1990)). A claim's mere association with a maritime occurrence does not itself confer admiralty jurisdiction over that claim. *Simon v. Intercontinental Transp. (ICT) B.V.*, 882 F.2d 1435, 1443 (9th Cir. 1989) (holding that a claim's relationship to maritime-related statutory rights "does not automatically confer admiralty jurisdiction on every claim that in any way relates to" them).

The Opposition supplies Plaintiffs' answer as to what "activity" underlies the RICO counts, and it is not maritime. The Opposition insists that "the gravamen of Plaintiffs' claims against each Chinese Defendant [including COSCO NA] is the *Defendant's own commercial conduct, not the Houthi attack*," and that "the commercial acts of the Chinese Defendants are the foundation." Opp'n 15 (emphases added) (quoting Compl. ¶ 77). The Opposition (at 15) cites the Complaint's allegation that COSCO NA's liability "is based upon COSCO's commercial participation" through its "U.S. commercial operations" — conduct that the Opposition describes as "independent of the attack." *See also* Compl. ¶¶ 76–77 (basing RICO counts on "commercial investment activity," like dollar-clearing and trade-finance operations conducted through U.S. bank branches, freight-booking through U.S. subsidiaries, and crude-oil purchase contracts). None of that activity occurred on navigable waters, and none of it — banking, trade finance, or cargo booking on

land — bears a substantial relationship to any traditional maritime activity. *See Sisson*, 497 U.S. at 367 (holding that "traditional maritime activity" encompasses navigation and activities such as storage and maintenance of vessels, not land-based commercial dealing several steps removed from any vessel's operation).

For the state-law tortious interference claims, the Opposition attempts (at 6) to save subject-matter jurisdiction by invoking, for the first time, supplemental jurisdiction. Supplemental jurisdiction is not pleaded in the Complaint at all, as to any Defendant. *See generally* Compl. ¶¶ 10–20. Nor does the Opposition identify any allegation or make any argument supporting supplemental jurisdiction here. *See* Opp'n 6. The Opposition also does not appear to invoke, even improperly, admiralty subject-matter jurisdiction over the tortious-interference claims. *See id*. But for the avoidance of doubt, the Court also lacks admiralty subject-matter jurisdiction over the tortious-interference claims because, as pleaded, they do not allege maritime torts. *See* Compl. ¶¶ 129–32. A contract-interference claim is not brought within admiralty merely because the claim is connected to a vessel; courts look to where the alleged wrong took effect, not to the locus of the conduct, and interference whose impact is felt on land falls outside admiralty jurisdiction. *See Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 455–56 (5th Cir. 1999) (holding that admiralty jurisdiction did not extend to tortious-interference-with-contract claim because "the impact of the tortious interference would be felt and 'take effect' on land where the interfered-with contracts were to have been performed").

Plaintiffs allege only that sinking the vessel indirectly disrupted a "contract for the carriage of cargo" causing the "loss of contract revenue." Compl. ¶ 129; *see* Opp'n 23. That impact, like the impact in *Egorov*, was felt on land, where Golden Adventure's contractual and business relationships existed and were to be performed, not on navigable waters. Recasting the vessel's

loss as an "interference" with anticipated shipping revenue does not convert an ordinary state-law business tort into a maritime one. *See Jerome B. Grubart, Inc.*, 513 U.S. at 534; *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972).

Plaintiffs' only remaining theory is federal-question jurisdiction, which the Complaint forfeited and the Opposition waived, and which, in any event, does not apply to Plaintiffs' state-law tortious-interference claims.

## II. THE COMPLAINT FAILS TO ALLEGE PERSONAL JURISDICTION OVER COSCO NA

The Opposition again attempts (at 11) to amend the Complaint by asserting, incorrectly, that it alleged (at Compl. ¶ 20) personal jurisdiction over COSCO NA as a "non-sovereign" defendant. This revisionist interpretation fails, as discussed above, because Plaintiffs' exclusive invocation of the FSIA is the only plausible reading of the Complaint, and the Opposition does not identify any allegation that would establish personal jurisdiction over COSCO NA under the FSIA. *See* Mot. 17. The Opposition also fails to identify any allegation that would establish personal jurisdiction over COSCO NA under any of the four new theories that the Opposition raises — theories that, as noted above, Plaintiffs have forfeited and waived.

### A. The Opposition Cannot Avoid That the Complaint Alleges Personal Jurisdiction Over COSCO NA Exclusively Under the FSIA

Because the Complaint alleges that COSCO NA is an agency or instrumentality of a foreign state, subject to this Court's jurisdiction "exclusively" under the FSIA's commercial-activity exception, the only plausible reading of the Complaint is that it asserts personal jurisdiction over COSCO NA "as provided by the applicable exceptions to the FSIA." *See* Compl. ¶ 20; *see also id.* ¶ 25 ("Each Chinese state-owned enterprise and state-owned bank named herein operates as an instrumentality, agent, and alter ego of the PRC and the Chinese Communist Party"). And because

the Complaint cannot satisfy the commercial-activity exception, Plaintiffs cannot establish personal jurisdiction over COSCO NA under the FSIA either. *See* Mot. 16–17.

### B. The Opposition Fails to Overcome the Complaint's Failure to Allege Any Other Basis for This Court to Exercise Personal Jurisdiction Over COSCO NA

The Opposition (at 11–12) also cannot identify any allegation in the Complaint to support this Court's exercise of personal jurisdiction over COSCO NA under any non-FSIA theory. *See* Mot. 17. The Opposition does not even indicate whether Plaintiffs purportedly allege general or specific personal jurisdiction over COSCO NA. In any event, the Complaint cannot satisfy either.

**No general personal jurisdiction.** The Complaint does not allege any facts to support a plausible inference that COSCO NA is "essentially at home" in this forum, as required to allege general personal jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889–92 (D.C. Cir. 2021). To the contrary, and as the Opposition concedes (at 11), the Complaint alleges that COSCO NA is headquartered in Secaucus, New Jersey, and has offices in Houston and Long Beach. Compl. ¶ 50.

**No specific personal jurisdiction.** The Opposition lists (at 11) four "independent statutory bases" — none of which is alleged in the Complaint and none of which is developed in the Opposition — that supposedly "reinforce" this Court's personal jurisdiction. Not so.

The Opposition points to the nationwide-service provision of the ATA. But because Plaintiffs abandon the Complaint's ATA claim against COSCO NA (*see* Opp'n 22), they cannot rely on the ATA as a hook for personal jurisdiction. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 31 (D.D.C. 2010) ("*Wultz I*") (holding that a plaintiff may invoke a "statute's nationwide service of process to establish personal jurisdiction" only if the plaintiff makes "a colorable claim under the statute" (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp.

2d 86, 97–98 (D.D.C. 2003))). Besides, contrary to the Opposition's suggestion (at 11), service of process alone cannot establish personal jurisdiction over a foreign ATA defendant, and Plaintiffs do not allege the requisite minimum contacts with the District. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570-GBD-SN, 2026 WL 2432174, at *12 (S.D.N.Y. Aug. 19, 2026) (holding that foreign ATA defendant has minimum contacts with the forum only if (1) defendant "'expressly aimed' or 'purposefully directed' intentional tortious acts at residents" of the forum, and (2) "plaintiffs' injuries 'arise out of or relate to those activities.'" (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 478–79 (S.D.N.Y. 2010))).

The Opposition fares no better by invoking (at 12) the RICO statute's nationwide-service-of-process provision, 18 U.S.C. § 1965. Section 1965(a) is irrelevant because the Complaint does not allege that COSCO NA "resides, is found, has an agent, or transacts [its] affairs" in this district. 18 U.S.C. § 1965(a). And § 1965(b) does not apply because that provision "grants a district court jurisdiction over a non-resident defendant [only] if 'personal jurisdiction based on minimum contacts is established *as to at least one defendant*,' and 'it is shown that the ends of justice require that other parties residing in any other district be brought before the court.'" *Gligorov v. Nation of Brunei*, No. 21-cv-1773-TSC, 2023 WL 1438326, *3 (D.D.C. Jan. 31, 2023) (emphasis added) (quoting *FC Inv. Grp. v. IFX Mkts., Ltd*, 529 F.3d 1087, 1099 (D.C. Cir. 2008)). The Complaint does not allege that any other Defendant resides in or conducts business in the District of Columbia or has any contacts whatsoever with the District of Columbia, let alone that the ends of justice require COSCO NA to be brought here.

Contrary to the Opposition (at 12), Rule 4(k)(1)(C) cannot help Plaintiffs. Rule 4(k)(1)(C), which permits personal jurisdiction based on service alone only "when authorized by a federal statute," does not obviate the RICO requirement that Plaintiffs allege that COSCO NA (under

§ 1965(a)) or another Defendant (§ 1965(b)) have the requisite minimum contacts with the legal forum (here, the District of Columbia). *See, e.g.*, *Cole v. Garner*, No. 25-cv-4239-RDM, 2026 WL 1266184, *3–4 (D.D.C. May 8, 2026) (dismissing RICO claim for lack of personal jurisdiction where plaintiffs failed to allege any connection between Tennessee-based defendants and the District of Columbia, because "section 1965(b)'s provision for nationwide service of process in RICO cases requires that the Court *first* 'have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators'") (emphasis added).

And although the Opposition points (at 12) to the D.C. long-arm statute as purportedly "reach[ing] a foreign corporation transacting business in the District," that provision is irrelevant, too. The Opposition does not identify any allegation that COSCO NA transacted business in the District of Columbia or otherwise had sufficient contacts under the D.C. long-arm statute.

**No pendent jurisdiction.** Because there is "no anchor claim" for personal jurisdiction, pendent personal-jurisdiction over Plaintiffs' state-law claims is likewise unavailable. *Rodriguez v. U.S. Dep't of the Air Force*, 387 F. Supp. 3d 130, 137 (D.D.C. 2019). The Court should thus dismiss all claims against COSCO NA for lack of personal jurisdiction.

### C. The Opposition's Request for a Surreply Is Groundless and Should Be Denied

Plaintiffs base their request for a surreply on the patently false assertion (at 12) that COSCO NA "does not address general or specific jurisdiction" in its opening brief. In fact, COSCO NA's opening brief addressed the Court's lack of personal jurisdiction over COSCO NA under the FSIA, the *only* basis alleged in the Complaint. *See* Mot. 16–17. COSCO NA also observed that, besides the FSIA, "the Complaint does not purport to allege any basis for this

Court's exercise of general personal jurisdiction or specific personal jurisdiction over COSCO NA." *Id.* at 17; *see also Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 188 (D.D.C. 2012) (holding that a surreply is inappropriate when arguments in reply memorandum "fall within the scope of the matters the opposing party raised in opposition, and the reply does not expand the scope of the issues presented" (alterations and internal quotation marks omitted)). COSCO NA was under no obligation to predict, and rebut, every possible theory of personal jurisdiction that Plaintiffs might, at some point, decide to invoke, particularly when the Complaint repeatedly averred that the FSIA supplied the "exclusive" basis for personal jurisdiction. *See FC Inv. Grp. LC*, 529 F.3d at 1100 (holding that a plaintiff bears the burden of establishing a basis for the exercise of personal jurisdiction over each defendant).

Having undertaken to revive forsworn personal-jurisdiction theories in their Opposition brief, and then chosen *not* to develop them with any specificity, Plaintiffs cannot now demand a surreply to address COSCO NA's responsive arguments. *See Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 154 (D.D.C. 2015) (holding that a surreply is not warranted where a plaintiff "improperly attempts to bolster arguments already made in his opposition brief").

## III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST COSCO NA

Plaintiffs consent (at 22) to dismissal of the ATA aiding-and-abetting claim against COSCO NA. But contrary to the Opposition (*id.*), that dismissal should be with prejudice, because Plaintiffs cannot state an ATA claim and any amendment of the Complaint would be futile: among other reasons, the Houthis were not designated as an FTO at the time of the attack as required to state an ATA aiding-abetting claim. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (stating dismissal with prejudice warranted when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996))); *Cole v. Boeing Co.,* 621 F. App'x 10, 11 (D.C. Cir. 2015)

("Courts often deny an amendment which would be futile because the amended claims could not survive a motion to dismiss."); *see also* 18 U.S.C. § 2333(d)(2); Mot. 28–29. No repleading by Plaintiffs can cure this deficiency.

Plaintiffs' remaining claims, which rely on impermissible group pleading and bare recitations of the statutory language, fare no better. As to the RICO claim, the Opposition does not identify any allegations to support a plausible inference that Plaintiffs suffered any domestic injury, that COSCO NA committed any predicate act, or that any COSCO NA conduct proximately caused Plaintiffs' injuries. *See* Mot. 20–26; *see also* Compl. ¶¶ 2, 4, 21 (alleging injury to a Marshall Islands corporation); *id.* ¶¶ 117, 120 (alleging predicate acts only against collective "Defendants"). And as to the tortious-interference claims, the Opposition first concedes (at 23) that the Complaint fails to allege the governing state law, then declines to supply one, and in any event fails to identify any allegations satisfying the claim elements under *any* law, including for the District of Columbia. *See* Mot. 32–34. Amendment of these claims also would be futile, and thus dismissal with prejudice is warranted. *Belizan*, 434 F.3d at 583; *see infra* §§ III.C.1, D.

Given the Complaint's deficiencies as to each of these claims, dismissal of the action against COSCO NA is foreordained, and so the Court may reach these arguments notwithstanding the Complaint's jurisdictional deficiencies, and dismiss on Rule 12(b)(6) grounds as well. *See Sherrod v. Breitbart*, 720 F.3d 932, 936–37 (D.C. Cir. 2013) (holding that courts may rule on merits without reaching jurisdictional questions when "precedent in this circuit renders the merits of this appeal a foregone conclusion"); *Ctr. for Reprod. L. & Pol'y v. Bush,* 304 F.3d 183, 194 (2d Cir. 2002) (holding that a court may rule on merits before jurisdiction "where the outcome on the merits has been 'foreordained' by another case such that 'the jurisdictional question could have

no effect on the outcome'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998))).

### A. The Opposition Does Not Overcome That Plaintiffs' Conclusory Group Pleading Violates Rule 8

The Opposition (at 23–24) underscores the Complaint's reliance on conclusory group pleading. The Opposition can point to only *five* paragraphs in Plaintiffs' 132-paragraph, 77-page Complaint that even *mention* COSCO NA by name. Opp'n 23–24 (citing Compl. ¶¶ 13, 48, 50, 91, 92). Those references do not state a claim against COSCO NA. The first (¶ 13) makes a subject-matter-jurisdiction allegation that the Opposition tries to retract (at 6–7). The second (¶ 48) describes a National Security Agreement that COSCO NA allegedly entered with CFIUS — an allegation that only undermines Plaintiffs' claims, and that the Opposition does not otherwise reference. *See* Mot. 19–20. The third (¶ 50) merely identifies COSCO NA as a "regional subsidiary" with various "subsidiaries and joint ventures," none of which is identified in Plaintiffs' claims. And the final two (¶¶ 91–92) make only unsupported, conclusory assertions that COSCO NA received some "commercial benefit."

The Opposition does not contest that, other than these *five* paragraphs, the Complaint makes *only* lumping allegations against collective "Defendants" or "Chinese Defendants." *See* Mot. 18–19. And, for essential elements of Plaintiffs' claims against COSCO NA, the Opposition can *only* point to allegations against Defendants collectively. *See, e.g.*, Compl. ¶ 9 (attributing Plaintiffs' injuries to "Defendants' concerted actions" without distinguishing between seventeen separate entities); *id.* ¶¶ 67–69 (attributing Hobbs Act extortion to "Chinese carriers" and "Chinese Defendants acting as the PRC's instruments"); *id.* ¶¶ 70, 94–96 (attributing money laundering to the "Chinese banking Defendants" New York branches); *id.* ¶ 117 (alleging a "pattern of racketeering activity" by the Houthis and "the other Defendants" collectively); *id.* ¶ 120 (alleging

that "each Defendant" entered the conspiracy); *id.* ¶ 129 (alleging that "Defendants," without distinguishing between them, interfered with a contract).

Thus, contrary to the Opposition, the allegations on which Plaintiffs primarily rely indeed make "no distinction at all among defendants" (Opp'n 24), rendering it impossible to determine which if any factual allegations apply to COSCO NA. *See Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (dismissing claims because plaintiffs "fail[ed] to distinguish between each entity, simply referring to all [defendants] collectively throughout the complaint and their briefing," making it "impossible for the Court or the defendants to determine what factual allegations pertain to" each one); *Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 169 (D.D.C. 2014) (holding that pleading was deficient because it "d[id] not specify which defendants engaged in each purported violation"); *Bates v. Northwestern Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 85 (D.D.C. 2006) (dismissing RICO claim where plaintiffs "generally neglect[ed] to distinguish between the defendants when describing the factual underpinnings of the complaint"). The Opposition (at 24) misplaces reliance on *Erickson v. Pardus*, which did not involve lumping allegations at all, and where the complaint was held to "less stringent standards" because the plaintiff was pro se. 551 U.S. 89, 94 (2007). Unlike the conclusory group allegations here, even the *Erickson* complaint made extensive "*specific* allegations," which were sufficient under Rule 8 to provide "fair notice." *Id.* at 93–94 (emphasis added).

### B. The Opposition Does Not Overcome That Dismissal of the ATA Claim Should Be With Prejudice

The Opposition consents (at 22) to the dismissal of the ATA aiding-and-abetting claim. This concession makes sense, because Plaintiffs cannot meet the threshold requirements to allege secondary liability under the ATA. For that reason, and contrary to the Opposition (*id.*), dismissal should be with prejudice, because amendment would be futile. *See Foman v. Davis*, 371 U.S. 178,

182 (1962) (holding that leave to amend may be denied for, among other things, "futility of amendment"); *Cole*, 621 F. App'x at 11 (stating that courts deny leave to amend as "futile" where the proposed "amended claims could not survive a motion to dismiss").

The Opposition concedes (at 22) that ATA aiding-and-abetting liability is available *only* for injuries arising from a terrorist attack carried out by an entity designated as an FTO as of the date the attack was committed, planned, or authorized. *See* Mot. 28 (citing 18 U.S.C. § 2333(d)(2)). And the Opposition concedes (at 22) that "Ansar Allah" (i.e., the Houthis) was not designated as an FTO until eleven months after the MV Rubymar attack. That statutory defect cannot be cured by any amendment, and so the ATA aiding-and-abetting claim should be dismissed with prejudice for that reason alone. *See Jung v. Ass'n of Am. Med. Colls.*, 184 Fed. App'x 9, 11–12 (D.C. Cir. 2006) (affirming dismissal with prejudice where claim was foreclosed by statute and "[a]ny allegation of other facts 'consistent with the challenged pleading' . . . 'could not possibly cure the deficiency'" (quoting *Firestone*, 76 F.3d at 1209)); *cf. Colon v. Twitter, Inc.*, 14 F.4th 1213, 1216–18, 1222–23 (11th Cir. 2021) (affirming dismissal with prejudice where, among other things, plaintiffs could not plausibly allege that attack was "committed, planned, or authorized" by a designated FTO). Moreover, the Opposition does not even try to contest (*see* Opp'n 22) that the Complaint fails to allege that COSCO NA knowingly provided substantial assistance to the attack on the MV Rubymar. *See* Mot. 29–32. Amendment would thus be futile on this ground as well.

The Opposition even fails in its only attempt (at 21) to salvage any element of Plaintiffs' ATA claim, contending that Dr. Chahadeh is a U.S. national covered by the ATA's private cause of action. But the Opposition does not deny the Complaint's failure to allege that Dr. Chahadeh owned the MV Rubymar or had any cognizable legal interest in it *at the time of the attack*, as

required by 18 U.S.C. § 2333(a). *See* Mot. 27. Plaintiffs' inclusion of an inflammatory ATA terrorism claim against COSCO NA was — to put it bluntly — nothing less than irresponsible.

### C. The Opposition Does Not Overcome That the Complaint Fails to State a RICO Claim

#### 1. The Opposition Does Not Overcome That the Complaint Fails to Allege a Domestic Injury

In assessing whether a civil RICO plaintiff has alleged a requisite "domestic injury," courts "look to the circumstances surrounding the alleged injury." *Yegiazaryan v. Smagin*, 599 U.S. 533, 543–44 (2023) (cited at Opp'n 18). An injury is "domestic" only where "those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically." *Id*. at 545. The relevant circumstances include "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Id.* at 544. In particular, courts consider "where an alleged racketeering scheme was devised, carried out, and directed." *Abernathy v. Carlyle Grp. Inc*, No. 22-cv-3603-ABJ, 2024 WL 5331993, at *8 (D.D.C. Sept. 27, 2024) (citing *Yegiazaryan*, 599 U.S. at 545–46). Here, the circumstances surrounding Plaintiffs' alleged injury — the sinking of the MV Rubymar — are exclusively foreign in every respect, and the Opposition does not plausibly contend otherwise.

The MV Rubymar was owned and operated by Golden Adventure Shipping, S.A., "a Marshall Islands corporation." Compl. ¶¶ 2, 21. A Houthi missile strike sank the vessel in international waters in the Strait of Bab el-Mandeb, thousands of miles from the United States. *See id*. ¶ 4. The alleged racketeering activity that purportedly caused this injury is equally foreign: the scheme was supposedly devised by the PRC, carried out in the Red Sea and the Middle East, directed from Beijing and Oman, and executed through Iranian arms transfers, Chinese oil purchases, and Houthi military operations abroad. *See id.* ¶¶ 5, 86–89. And the "injurious aims" of the alleged campaign did not target the United States or Plaintiffs specifically. *Abernathy*, 2024

WL 5331993, at *7. The Complaint itself characterizes the Houthis' campaign as aimed at inducing fear across "the global shipping market" and coercing "competitors" off the Red Sea route. Compl. ¶¶ 71, 91. Those circumstances do not "ground the injury in the United States" but abroad. *Yegiazaryan*, 599 U.S. at 544.

The Opposition fails in its attempts to recharacterize Plaintiffs' injury as domestic. The Opposition notes (at 18) that Golden Adventure is *now* a Wyoming corporation and Dr. Chahadeh is a U.S. citizen. No matter. As the Opposition acknowledges (at 18), *Yegiazaryan* "rejected" the rule that an injury occurs at the plaintiff's place of residence. 599 U.S. at 545. And the Opposition ignores that Golden Adventure Shipping Corp.'s only connection to the injury is that it *acquired* its claims by an assignment from a Marshall Islands corporation that occurred *after* the injury. *See* Compl. ¶¶ 2, 21; Mot. 22–23, 27–28. Likewise, Dr. Chahadeh's only connection to the injury is his ownership of Golden Adventure Shipping Corp. *See* Compl. ¶ 22. A post-injury assignment of claims from a foreign entity to a domestic one cannot retroactively convert a foreign injury into a domestic one. *See Yegiazaryan*, 599 U.S. at 545 (requiring determination whether "the injury *arose* domestically" (emphasis added)).

The Opposition also mistakenly relies (at 18–19) on allegations of "money laundering conducted through the New York branches of the banking Defendants" and a "captive customer dynamic" in the U.S. market. Neither allegation overcomes the foreign character of Plaintiffs' *injury*. At most, these allegations point to tangential conduct and effects in the United States. That some tangential activity in the alleged scheme may have touched the United States does not relocate the plaintiff's own injury to these shores. *See Yerkyn v. Yakovlevich*, 164 F.4th 224, 230–31 (2d Cir. 2026) (observing that, in determining the place of injury, "'the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel

whenever some domestic activity is involved'") (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010)); *Abernathy*, 2024 WL 5331993, at *8 (finding no domestic injury where "the bulk of the alleged injury took place" overseas, regardless of "where the money was supposed to end up eventually"). Because the circumstances surrounding Plaintiffs' injury are overwhelmingly foreign, the Complaint does not allege a domestic injury, and both the racketeering claim (Count I) and the conspiracy claim (Count II) fail. Plaintiffs' inability to cure this factual defect warrants dismissal of both of these claims with prejudice. *See Foman*, 371 U.S. at 182.

#### 2. The Opposition Does Not Overcome That the Complaint Fails to Allege a Racketeering Claim Under § 1962(c)

The Opposition confirms (at 20–21) that the Complaint alleges neither (i) two predicate acts by COSCO NA, nor (ii) any act by COSCO NA that proximately caused Plaintiffs' injuries.

**No predicate act by COSCO NA.** The Opposition purports (at 21) to identify two predicate acts: the sinking of the MV Rubymar and a supposed Hobbs Act violation. But the Complaint does not allege facts to support a plausible inference that COSCO NA committed either act. Indeed, the Opposition does not even try (at 21) to allege that COSCO NA played *any* role in the MV Rubymar's destruction, which the Complaint instead alleges (at ¶ 4) was committed by Houthi rebels.

And the Opposition does not point to any factual allegation that could support a plausible inference that COSCO NA violated the Hobbs Act, which prohibits "obstruct[ing], delay[ing], or affect[ing] commerce . . . by robbery or extortion." 18 U.S.C. § 1951(a). A Hobbs Act violation requires a showing that the defendant "obtai[ned] . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2). The Opposition merely contends (at 20–21) that COSCO NA's U.S. operations "captured" "cargo,

market share, and customers" purportedly relinquished by other Western carriers when they abandoned the Red Sea route. Allegedly obtaining some downstream benefit does not, alone, constitute a Hobbs Act violation. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404–05 (2003) (holding that Hobbs Act extortion requires the defendant to "obtain" property from the plaintiff, and that a defendant who "neither pursued nor received 'something of value from' [the plaintiff] that they could exercise, transfer, or sell" has not committed extortion). The Complaint does not allege that COSCO NA *ever* obtained any property *from Plaintiffs*, let alone that it did so through force or threats. *See Sekhar v. United States*, 570 U.S. 729, 734 (2013) (reaffirming that "[o]btaining property" in violation of the Hobbs Act "requires 'not only the deprivation but also the acquisition of property,'" and that "the victim must 'part with' his property and the *extortionist* must 'gain possession' of it" (emphasis added) (quoting *Scheidler*, 537 U.S. at 403–04)).

**No proximate causation.** The Opposition (at 21) fails to identify a single allegation to support a plausible inference that any conduct by COSCO NA proximately caused — that is, "led directly to" — Plaintiffs' injuries. Mot. 24–25 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). The Opposition contends, without support, that "the destruction of the [MV Rubymar] was the *direct object* of the extortionate campaign, not a downstream consequence of it." Opp'n 21 (emphasis added). But this conclusory assertion cannot be squared with the Complaint's allegations of an extended causal chain involving several steps and a host of third parties, all outside of COSCO NA's control. *See* Mot. 25.

While the Opposition points (at 21) to *Bridge*'s holding that "[f]irst-party reliance is not required," that holding pertains to the specific pleading required in mail-fraud cases and has no bearing here. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648–49 (2008) (holding that a civil RICO claim predicated on mail fraud does not require showing that plaintiff itself relied

on the defendant's misrepresentation, because first-party reliance is not an element of the mail-fraud statute). *Bridge* does reaffirm, however, that proximate cause can be found only where there are "no independent factors" accounting for the plaintiffs' injury. *Id.* at 658. Here, by contrast, the Complaint alleges (*e.g.*, at ¶ 27) at least five independent factors, and the Opposition itself identifies (at 20–21) multiple intervening events, separating any alleged conduct by COSCO NA and the sinking of the MV Rubymar. *See* Mot. 24–25.

**3. The Opposition Does Not Overcome That the Complaint Fails to Allege a Conspiracy Claim Under § 1962(d)**

The Opposition (at 19–20) does not identify any factual allegation supporting a plausible inference of any agreement between COSCO NA and the PRC, the Houthis, Sinopec, or anyone else. *See* Mot. 26. Indeed, the Complaint does not allege *any* communication, meeting, or coordinated act from which an agreement could be inferred. *See id.* The Opposition can only repeat (at 19–20) the Complaint's conclusory, lumping assertion (¶ 120) that "each Defendant entered the agreement" by "'knowingly providing . . . services that sustained the enterprise's operations, with knowledge that the enterprise would engage in Hobbs Act extortion, wire fraud, money laundering, and acts of maritime violence,'" and by "'accepting the commercial benefits of the enterprise's racketeering activity . . . .'" But that boilerplate is merely a recitation of legal elements, not a cognizable factual allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint does not allege what exactly COSCO NA "knew," much less how COSCO NA manifested any agreement to the supposed conspiracy. *See generally* Compl. ¶ 120. The Complaint's mere recitation of the statutory elements of § 1962(d) and blanket application to all seventeen Defendants as a group is precisely the sort of "threadbare recital[]" that, under *Iqbal*, cannot state a claim. 556 U.S. at 678; *see also Bates*, 466 F. Supp. 2d at 85; *Toumazou*, 71 F. Supp. 3d at 21.

The few factual allegations that the Opposition points to (at 20) cannot support a plausible inference of an agreement between COSCO NA and anyone. Those allegations fail at the outset, because they exclusively concern COSCO Shipping Lines, not COSCO NA, and the Complaint makes no factual allegation that COSCO NA specifically had knowledge of, or participated in, any of the purportedly conspiratorial contact. *See* Mot. 9–12, 25–26. Further, those allegations do not support a plausible inference that even COSCO Shipping Lines, let alone COSCO NA, joined any conspiracy.

The Opposition points (at 20) to allegations that COSCO Shipping Lines ceased Israel-bound bookings "in explicit response to Houthi threats" and to AIS broadcasting of Chinese ownership. But *responding to* extortionate threats is not the same as joining a conspiracy to make them. *See Ocasio v. United States*, 578 U.S. 282, 297 (2016) (explaining that a victim who makes payments demanded through threatened force or fear, "simply by making the demanded payments, does not enter into a conspiratorial agreement" with the party extorting them). And the Complaint does not allege that *COSCO NA* made the decision to cease Israel-bound bookings or directed AIS broadcasting. The facts the Complaint relies on (at ¶¶ 50, 91) — that COSCO NA is a subsidiary of COSCO Shipping Lines, that it operates in the United States, and that it benefited commercially — describe a corporate relationship and a commercial outcome, not knowledge of an agreement to commit federal crimes. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (holding that a commercial relationship to receive fees from a client engaged in alleged wrongdoing, without more, does not support a "plausible inference" of an agreement to participate in a RICO conspiracy).

### D. The Opposition Does Not Overcome That the Complaint Fails to State a Claim for Tortious Interference

The Opposition concedes (at 23) that the Complaint does not identify the applicable state law governing its tortious-interference claims. Remarkably, the Opposition *still* fails to identify any governing law. COSCO NA established in its opening brief that this failure is fatal to Plaintiffs' tortious-interference claims, and the Opposition does not identify a single authority to the contrary. *See* Mot. 32.

The Opposition misses the point in contending that, "[i]f the governing law is genuinely contested, it can be determined on notice at a later stage." Opp'n 23 (citing Fed. R. Civ. P. 44.1). COSCO NA is not disputing which governing law should apply to these common-law claims — nor could it, because Plaintiffs have not put forward any governing law that COSCO NA might contest. And by invoking Rule 44.1, the Opposition (at 23) only underscores the impact of Plaintiffs' failure to identify the governing law. Rule 44.1 requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Plaintiffs have given no such notice, yet now suggest that some unidentified foreign law might govern their tortious-interference claims.

The Opposition's suggestion that COSCO NA "has briefed District of Columbia law and has demonstrated no prejudice" (Opp'n 23) is equally unavailing. COSCO NA addressed District of Columbia law solely "[b]y way of example" and "without conceding its applicability" (Mot. 32), precisely because the Complaint identifies no governing law. That COSCO NA chose to illustrate the Complaint's deficiencies under one *potential* body of law does not relieve Plaintiffs of their burden to plead which law they invoke.

In any event, the Opposition does not contest (*see* Opp'n 22–23) that Plaintiffs likely must allege that (1) Plaintiffs had a "valid contractual or other business relationship," (2) COSCO NA

*knew* about that business relationship, (3) COSCO NA *intentionally* interfered with that relationship, and (4) damages resulted. *See* Mot. 32. Nor does the Opposition contest (*see* Opp'n 22–23) that "the tort of intentional interference with a prospective business advantage runs 'parallel to that for interference with existing contracts.'" Mot. 32 (quoting *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986)). Yet the Opposition does not even try to show that all these elements are alleged in the Complaint. Instead, the Opposition (at 23) contends only that "Count IV [Intentional Interference with Contract] identifies a specific contract." But the Opposition does not point to a single allegation to support a plausible inference that COSCO NA *knew* about that contract, much less that COSCO NA intentionally interfered with it. *See* Mot. 32–34.

As to Plaintiffs' business-expectancy claim (Count V), the Opposition does not contest that Plaintiffs fail to allege any more than an expectation of "future revenue through the MV Rubymar's remaining useful life" (Compl. ¶ 131). Contrary to the Opposition (at 23), that is precisely the type of "generic opportunit[y]" that cannot establish a tortious-interference claim. *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 29–30 (D.C. Cir. 2010); *see* Mot. 33.

## IV. DISPOSITION OF PLAINTIFFS' CLAIMS AGAINST COSCO NA SHOULD NOT BE DELAYED

Plaintiffs' request for leave to amend the Complaint after completing service on other Defendants (Opp'n 24–25) should be denied because, as shown above (*see* § III), amendment would be futile, such that each of Plaintiffs' remaining claims against COSCO NA should be promptly dismissed with prejudice. *Belizan*, 434 F.3d at 583.

Furthermore, COSCO NA should not have to wait until Plaintiffs serve all *sixteen* other Defendants before Plaintiffs even try to amend their unsalvageable Complaint, as the Opposition requests. *See* Opp'n 24–25 (asking the Court to delay any amendment deadline until "thirty days after the last-served Defendant's deadline to respond to the Complaint"). Notably, in their motion

for an extension of time to serve the foreign defendants, Plaintiffs expressly represented to this Court that COSCO NA's briefing schedule would be unaffected by the extension. *See* Pls.' Mot. for Extension ¶ 8, ECF No. 8 (July 2, 2026). The Court granted the extension on that representation. *See* Order Granting Extension (July 7, 2026). Having obtained that relief on their express representation that COSCO NA's briefing would proceed independently, Plaintiffs now seek to use the very existence of that extension to postpone resolution of COSCO NA's motion for at least several months. Plaintiffs' bait-and-switch on the Court should not be rewarded.

Nor is there any judicial efficiency in the Opposition's request. Plaintiffs are unlikely to complete service of the Complaint on all Defendants by the Court's December 29, 2026 deadline. Plaintiffs' own status report indicates that now, over five months after filing the Complaint, Plaintiffs have only just begun preparing certified translations for service abroad. Pls.' Status Report 2–3, ECF No. 11 (Aug. 31, 2026). Effecting service on foreign defendants routinely takes years. *See, e.g.*, *Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, *3 (S.D. Cal. 2020) ("Despite Plaintiff's efforts, more than 34-months have passed, and the [Chinese] Defendant remains unserved."); *see also id.* at *2 (noting that "service of foreign defendants in China can take more than two years"). Moreover, under the Federal Rules of Civil Procedure and 28 U.S.C. § 1608, Plaintiffs must serve any amended complaint that asserts new claims through the same protracted procedures. *See* Fed. R. Civ. P. 5(a) (an amended complaint that asserts "new or additional claims" must be served on parties in default in accordance with Rule 4); Fed. R. Civ. P. 4(j) (foreign states and their agencies and instrumentalities must be served in accordance with the FSIA, 28 U.S.C. § 1608).

Nothing in the Opposition explains why COSCO NA, a domestic entity that has been served, has appeared, and has fully briefed its motion to dismiss, should bear a delay of potentially years contingent on service of foreign defendants.

## CONCLUSION

For the foregoing reasons and those stated in COSCO NA's motion, this Court should grant COSCO NA's motion and should dismiss all claims against COSCO NA with prejudice.

Dated: September 15, 2026
Washington, DC

Respectfully submitted,

WHITE & CASE

/s/ *Christopher M. Curran*
Christopher M. Curran (D.C. Bar No. 408561)
Nicolle Kownacki (D.C. Bar No. 1005627)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: + 1 202 626 3600
Facsimile: + 1 202 639 9355
ccurran@whitecase.com
nkownacki@whitecase.com

*Counsel for COSCO SHIPPING (North America) Inc.*